## H. E. EDMONDS, Respondent, v. MODERN WOOD-MEN OF AMERICA, Appellant.

**Kansas City Court of Appeals, May 6, 1907.**

1. **BENEFIT SOCIETIES: Jurors: Interest.** In a trial on a benefit certificate issued by a fraternal society, members of the society are incompetent jurors and properly excluded.

2. **———: Application: Age.** An application and the evidence is examined and held that the application shows that the applicant was born in 1851, and was over forty-five years of age at the time of the application, though the latter stated he was between forty-four and forty-five years of age.

3. **———: By-laws: Over Age: Waiver.** A society took an application showing the applicant's birth date, which made him over age according to the by-laws and retained the same for nine years, collecting dues. *Held*, it must be presumed the society knew of the acts of the officers taking the application which appeared on the face thereof, and waived the applicant's disability.

4. **———: ———: ———: ———: Ultra Vires.** The statute under which the benefit society was organized did not fix a limit for membership. The by-laws did. The applicant's application showed he was over the prescribed age. *Held*, his disability could be waived by the society and his acceptance as a member was not *ultra vires*.

5. **———: ———: Application: Age: Instruction.** An application made in 1896 showed that the candidate was born in 1851, but stated he was between forty-four and forty-five years of age. An instruction told the jury it was admitted that he was born in 1851, but that if a change in writing the year of his birth could be readily observed and render the statement of his age doubtful, then the society's duty was to inquire and ascertain the fact as to his age. *Held*, that if the applicant stated the true date of his birth that alone should determine his age, but if the statement was ambiguous the duty of the society was to investigate. And since it made no effort in that direction it must be bound by its contract.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler*, Judge.

AFFIRMED.

*Benj. D. Smith* and *Tunnell & Hart* for appellant.

(1) The court had no right to reject Messrs. William Fulcher, Walter Bowman and George Frazier upon the *voir dire* examination of the jury for the sole reason that they were members of the appellant society. No evidence of prejudice on their part was shown, in fact, no questions along that line were asked. (2) The court should have given to the jury instructions numbered 3 and 4 asked by the appellant. It being admitted that Edmonds was over the age of forty-five years the only question for the jury was as to the existence of a valid by-law fixing the age at which members could be admitted to membership in the appellant society, and if they found from the evidence that it was provided by the by-laws of appellant that a person over the age of forty-five years could not become a member of appellant society they could have found for the defendant, here appellant. Hunt v. Supreme Lodge Chosen Friends, 64 Mich. 671, 31 N. W. 576; United Society v. White, 100 Pa. St. 12; Insurance Co. v. France, 91 U. S. 510; Lenz v. Insurance Co., 8 Mo. App. 353; Lloyd v. Modern Woodmen of America, — Mo. App. —, 87 S. W. 530; Lavin v. Grand Lodge A. O. U. W., — Mo. App. —, 78 S. W. 325; Harvey v. Grand Lodge A. O. U. W., 50 Mo. App. 463; Chadwick v. Order of Triple Alliance, 56 Mo. App. 463; Borgraefe v. Knights of Honor, 22 Mo. App. 141; McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384; Lyon v. Royal Society of Good Fellows (Mass.), 26 N. E. 236; McCoy v. Insurance Co. (Mass.), 25 N. E. 289; Royal Highlanders. v. Scoville (Neb.), 92 N. W. 206; Driscoll v. Modern Brotherhood of America (Neb.), 109 N. W. 158; Graves v. M. W. A. (Minn.), 89 N. W. 6; Modern Woodmen of America v. Tevis, 117 Fed. 369, 54 C. C. A. 293, and cases cited therein.

*John S. Crawford* and *Lozier, Morris & Atwood* for respondent.

(1)   On the *voir dire* examination of the jury, the three members of the panel who were members of the defendant society were properly excused. They were clearly disqualified by reason of such membership and interest in the result of the trial.   McCarthy v. Railroad, 92 Mo. 536; State v. Bank, 80 Mo. 626; State v. Miller, 156 Mo. 76; State v. Goldsoll, 10 Mo. App. 482; Eberle v. St. Louis Public Schools, 11 Mo. 247; Fine v. St. Louis Public Schools, 30 Mo. 166; Fulweiler v. St. Louis, 61 Mo. 479; 1 Thompson on Trials (1 Ed.), secs. 63, 64. (2)   The court submitted to the jury under proper instructions all questions of fact involved in this cause, and the finding of the jury thereon is conclusive, there being substantial and ample evidence to support the verdict.   Bradford v. Rudolph, 45 Mo. 426; Lail v. Express Co., 81 Mo. App. 232; St. Louis v. Lannigan, 97 Mo. 175; Murphy v. Gillum, 79 Mo. App. 564.   (3)   The application of Isaac Edmonds showed that he was either over the age of forty-five years or that his age was doubtful by reason of the conflict between the date of his birth and his attained age.   Defendant's failure to ascertain applicant's true age, its acceptance of him as a member, its issuance to him of the benefit certificate, and its receipt of dues and assessments thereon for nearly nine years amounts, in law and fact, to a waiver of the provisions of its by-laws limiting its membership to those under forty-five years of age at date of entry, and conclusively estops defendant from denying liability on such benefit certificate.   Reed v. Bankers' Union of the World, 121 Mo. App. 419, 99 S. W. 55; Fulkerson v. Lynn, 64 Mo. App. 653; Bishop on Contracts, sec. 792; McMahon v. Maccabees, 151 Mo. 537; Hirschl on Frat. Societies, p. 34; Bacon on Ben. Soc. (1 Ed.), secs. 427, 434; Harvey v. Grand Lodge, 50 Mo. App. 472; Chadwick v. Triple Alliance,

56 Mo. App. 463; Grand Lodge v. Reneau, 75 Mo. App. 402; Shotliff v. Modern Woodmen, 100 Mo. 138.

ELLISON, J.—The defendant is a fraternal benefit society and issued to the plaintiff's deceased husband a benefit certificate of life insurance in the sum of two thousand dollars. Upon the death of deceased defendant refused payment and the present action was begun in which plaintiff prevailed in the trial court. According to a by-law of the society the defendant was forbidden to receive into membership or issue certificates to persons over forty-five years of age. Deceased was just over that age when he made his written application for the certificate on the eleventh of November, 1896. Besides a preliminary objection to excusing members of the jury for cause, there were two principal questions presented; first, whether deceased misrepresented his age in the application; and second, if he did not, could defendant bind himself to pay a certificate issued to a person of an age to whom the by-laws forbid membership?

There were certain citizens called to serve as jurors. They were members of the defendant society and as such their assessments would be affected by the result. Interest in litigation though as remote as that of a taxpayer who would be compelled to contribute his mite to the payment of any judgment obtained against a county or municipality was sufficient, at common law, to disqualify a citizen thereof proposed as a juror. We now have a statute qualifying them, but there is no statute changing the rule as to members of an organization like defendant. The trial court properly excluded them. [Eberle v. St. Louis Public School, 11 Mo. 261, Judge SCOTT's opinion, approved in Fine v. St. Louis Public Schools, 30 Mo. 166; Fulweiler v. St. Louis, 61 Mo. 479.]

It appears that in the printed application blank

which was filled out and signed by deceased there was a question as to his age. The blank was in these words: "I was born in the State of ———— on the ———— day of ———— 18 —, and am now between ———— and ——— years of age." This was filled out by deceased in ink so as to read as follows: "I was born in the State of Canada on the twenty-second day of August 1851, and am now between forty-four and forty-five years of age." We say that deceased gave the date of his birth as in the year 1851, for the reason that the jury has so found. The facts surrounding the matter of dispute were these. The blank was first filled with the year 1852, then the figure 1, was drawn over and through the figure 2, in a different colored ink, so that the figure 1 stood out in such prominence as, connected with the testimony in plaintiff's behalf, well justified the jury in finding that the year of deceased's birth was stated to be in 1851. But in addition to that it was shown that defendant, in 1903, transcribed its records onto what was known as card records, and in so doing it transcribed the application as stating deceased's birth to have been in 1851. So therefore we entertain no doubt the jury were correct in finding that when the application was received by defendant, it was received as stating his birth to have been in that year. Being born in that year, it was apparent to defendant that he was more than forty-five years of age when it issued the certificate to him. We are not unmindful of the immediate, subsequent part of his statement, viz., that he was "now between forty-four and forty-five years of age." If he was born in 1851, he was necessarily over forty-five and not between forty-four and forty-five. But we take it to be the more reasonable view to regard that as the erroneous conclusion or calculation from the first statement. The truth doubtless is, and it is borne out by the different colored ink, that some other person filled out the application and when deceased

came to sign it, he noticed the wrong year of his birth, changed it, and did not notice the statement of his age in years which immediately followed.

Coming to the second question above noted, we find defendant stoutly maintaining that notwithstanding its officers who took and who accepted the application and those who afterwards re-entered it in the card records of the society, knew deceased was over forty-five years of age, and notwithstanding the defendant collected dues from him and retained him in fellowship a period of about nine years, reaching from his initiation to his death, yet it could not bind itself by contract, with one older than was permitted by its by-laws. The defendant's point includes a denial of its liability to the law of estoppel and waiver. Whatever may be the rule in some jurisdictions, we regard it as well settled in this State that a fraternal society in prosecuting the insurance feature of its existence, is subject to the law of waiver, or to be held estopped by its conduct. [McMahon v. Maccabees, 151 Mo. 522; 2 Bacon, Ben. Societies, secs. 434, 427; Callies v. Modern Woodmen, 98 Mo. App. 521; Shotliff v. Modern Woodmen, 100 Mo. App. 138; Andre v. Modern Woodmen, 102 Mo. App. 377; Weber v. Order of Pyramids, 104 Mo. App. 729.] To these plaintiff has added in her brief a number of other cases from other states. It is said in the case first cited that a member is presumed to know the laws of such society and that therefore the contract of insurance should be construed as having been made under the limitations of those laws. Yet that "a member has a right to look to the general conduct of the society itself, in respect to the observance of its laws particularly those relating to his own duties." [See also Seehorn v. Knights, 95 Mo. App. 233.] It is claimed by defendant that the acts from which an estoppel is based were committed by officers of such subordinate class as not to bind the association itself. In speaking of a like

question in McMahon v. Maccabees, supra, Judge VAL-LIANT stated that, "A member dealing with a subordinate officer of the society, knowing his duties to be prescribed by law, has no right to rely upon the act of that officer, if he should attempt to waive a requirement which under the law he has no right to waive. But when he has dealings of that kind with such officer and those dealings are of such a nature that they must pass under the observation of those who have in charge the ultimate management of the company's affairs to such an extent as to justly induce the member to believe that the practice is approved by the company itself, the company is estopped to take advantage of the situation." So therefore when defendant's officers took deceased's application and retained it near nine years collecting dues from him all the while, we will presume it knew of the acts of the officers taking it which appeared upon its face.

It seems to us that defendant in making the contention as to the inability of any of its officers to waive its by-laws or to estop it by their conduct, is putting that inability on as broad a plane as *ultra vires* would occupy. That we consider to be going too far. Certainly there are acts which defendant's officers might do which would not bind the society by waiver, estoppel or any other legal mode. They could not bind the society to a contract which its charter from the State would not authorize. It, for instance, would not be bound by a contract of fire insurance. The law of its existence would condemn that. That would be *ultra vires*. But if the act be within its charter power, it may do the act either directly, or by waiver or estoppel, notwithstanding its own by-law. For, a disability *imposed by its own act may be removed by its act*. Applying this statement of what we conceive to be sound law, to the present case, we find that, while defendant's own by-law disallowed it to issue a certificate of insurance to one over forty-five

years of age, yet there was and is nothing in the statute limiting it to persons under that age. There was therefore nothing to prevent defendant from issuing the certificate to deceased save its self-imposed disability; which, we have seen, it removed by the conduct of its officers.

We do not regard that there was any error in the action of the court on the instructions. We must look upon those for plaintiff in the light of the evidence in view of which they were drawn. The one given at plaintiff's instance informed the jury that it was admitted that deceased was born on the twenty-second of August, 1851, and that when he made his application in November 1896, he was over forty-five years of age, and if he truly stated the day of his birth as on the twenty-second of August, 1851, then the date so given would control the subsequent statement that he was between the age of forty-four and forty-five years. The remainder of the instruction informed the jury in substance that if the change made in the figures representing the year of his birth could be readily observed and that they rendered the statement of his age doubtful, then it was defendant's duty to have made inquiry as to his age and ascertained the fact. That if it accepted him as a member and continued to collect dues and assessments from him either knowing his age, or after having knowledge or means of learning his true age, it was estopped from denying liability.

It is clear that if deceased stated the true date of his birth that (standing alone) should control or determine his age. But it may be that this statement, being immediately followed by the additional statement that he was between forty-four and forty-five years old, left it a matter of doubt to any one depending upon the whole statement, whether the applicant was mistaken as to the date of his birth, or as to his age. In such case it was defendant's duty to have ascertained the

fact instead of accepting such doubtful statement and collecting dues and assessments through a series of years. Indeed, as to this defendant, it must be assumed that it concluded to take the risk of the applicant's true age and accept him as a member. It can make no difference whether the statement, as a whole, was ambiguous or of doubtful meaning, either from change of figures of birth, or from age being stated inconsistently with birth, it was defendant's duty to have ascertained the fact before accepting the application. It made no effort in the line of ascertaining the fact and it must be held to be bound by its conduct. There can be no doubt whatever that in any view of the instruction no harm could have resulted to defendant, since, even conceding that the first clause stating deceased's birth should not control the second clause stating his age when considered together, yet it, at least, made it a matter of doubt, which, as just written, should have been inquired into by defendant, and which there is no pretence of its doing.

To repeat the foregoing in different language: If the deceased was born in August, 1851, then he was over forty-five years of age when he made his application for membership in November, 1896, so if he stated he was born in that year and also that he was between forty-four and forty-five years of age, the most that defendant could claim would be that his age was a matter of doubt. Therefore, if the court had not instructed that the statement of the date of his birth controlled the statement of his age, it could not have done less than have instructed that the two statements (or rather two parts of one statement) left his age in doubt and that defendant should have made inquiry and ascertained the fact. The finding of the jury would necessarily have been for the plaintiff, for, as already stated, no inquiry was made. What we have written disposes of all questions we deem necessary to set out herein. We

consider no error was made in instructions or evidence and that the trial was full, fair and complete in all details and hence affirm the judgment. All concur.