Walter GOLDEN et al., Appellants,

v.

Guy Eugene CHIPMAN, Respondent.

No. 36701.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Feb. 24, 1976.

Motion for Rehearing or Transfer
Denied April 13, 1976.

Application to Transfer Denied
June 14, 1976.

Patrick J. Eng, Columbia, for appellants.

Lewis J. Leonatti, Edwards, Seigfreid, Runge & Hodge, Inc., Mexico, for respondent.

CLEMENS, Presiding Judge.

The sole issue on this appeal: Did the trial court err in denying plaintiffs' challenge for cause as to venireman Vernon Duffy on the ground Duffy's son, a law student, was employed as a law clerk by defense counsel? Astute counsel have presented cogent oral arguments and written briefs, each strongly supporting their adverse contentions.

The action is for wrongful death of plaintiffs' wife and mother. By a nine to three verdict the jury found for defendant. Venireman Duffy, whom plaintiff had not peremptorily challenged, was the jury foreman.

We relate the pertinent trial court proceedings. In pre-trial conference the court took up several preliminary matters. Plaintiffs' counsel told the court: "We might raise this problem right now in order to save needless interrogation. One of the jurors, Vernon Duffy, whose son is an employee of Jerry's, I think certainly he is subject to challenge for cause." The court responded: "Well, the mere relationship, I do not think would be sufficient grounds for challenge for cause and if that is what is being done . . ." Voir dire followed; the inquiry re venireman Duffy:

"Q. MR. SIMON: [Plaintiffs' counsel] Mr. Duffy, I would like to ask you, sir, a personal question if I might. Is your son a law student?

A: Yes, he is.

Q: And has he been employed by the firm of Edwards, Seigfreid, Runge & Hodge?

A: Yes.

Q: Is he still employed by the firm at this time?

A: Yes.

Q: Does he live at home or in Columbia?

A: He lives in Columbia.

Q: Let me ask you this: Do you feel that the fact that your son is an employee of that law firm would in any respects influence your decision in this case?

A: Not at all.

Q: Do you feel it would embarrass you to have to bring back a decision against the firm's client if you feel that the evidence and the law as given to you by Judge Adams called for such a conclusion?

A: Not at all.

Q: Do you feel it would make—in any respect at all make it more difficult for you to decide this case solely on the evidence?

A: No, sir.

Q: You don't feel that it would affect you at all, is that correct?

A: I don't even know the nature of his work there, so it would not.

Q: Are you and your son close?

A: I don't—

Q: Do you see him frequently?

A: Oh, yes. Yes.

Q: And you have not discussed this particular case with him?

A: Not at all, no."

The critical motion and the court's ruling:

"MR. VAN MATRE: [Plaintiffs' counsel] Notwithstanding the answers that Juror Vernon Duffy made, we renew our challenge for cause because we don't think it is morally possible for the father of a man employed by the defendant's attorneys' office to act as a fair and impartial juror and we renew our challenge for cause.

THE COURT: Do you have any comment on that?

MR. SEIGFREID: [Defense counsel] I object to it, Your Honor.

THE COURT: The challenge would be denied."

■ We note parenthetically that plaintiffs did not pursue their unsuccessful chal-

lenge to venireman Duffy by peremptorily challenging him. Plaintiffs contend, and defendant does not deny, that plaintiffs did not thereby waive their challenge for cause. We agree, since a litigant is entitled to a full panel of qualified jurors before making peremptory challenges. *State v. Lovell,* 506 S.W.2d 441 (Mo.1974).

Plaintiffs' sole point on appeal is that the trial court erred in denying their challenge to venireman Duffy for cause "because of his family relationship with defendant's attorneys of record," that is, because Mr. Duffy's son was an employee of defense counsel.

Opposing counsel acknowledge their inability, as we do, to find a Missouri decision on all fours with or closely similar to the problem here. Missouri decisions have ruled many cases concerning challenging jurors for cause, under a multitude of varying circumstances.[1] We will explore these to determine underlying principles, weigh them, and then apply these principles to the present case.

■ Several categories of challenge-for-cause cases are not pertinent. Ours is not a case where a venireman acknowledged his inability to serve impartially. See *Theobald v. St. Louis Transit Co.,* 191 Mo. 395, 90 S.W. 354[1–4] (1905). To the contrary, venireman Duffy professed impartiality, although his conclusory statements were neither binding on the trial court nor controlling here. *Moore v. Midwest Freightways,* 266 S.W.2d 578[8–12] (Mo.1954). Other dissimilar juror qualification cases concern veniremen who have concealed pertinent information. *Maddox v. Vieth,* 368 S.W.2d 725[3–4] (Mo.App.1963). Here, the good faith of venireman Duffy's answers is unchallenged.

Another broad category of veniremen subject to challenge for cause is based on the personal relationship, close or remote,

between a venireman and the litigant upon whose rights he would pass. By § 495.150, RSMo 1969, veniremen are disqualified for cause if they are then clients of a party's attorney. *Learned v. Godfrey,* 461 S.W.2d 5 (Mo.1970). In contrast, a venireman's past employment of a litigant's attorney does not require disqualification for cause. *Blackburn-Ens., Inc. v. Roberts,* 379 S.W.2d 630[7] (Mo.App.1964).

Excluding from our consideration the above types of cases where disqualification of a venireman is mandatory, we delve into consideration of general principles and their application to cases where disqualifying a venireman, as here, is discretionary with the trial court and the ultimate appellate decision depends on whether the trial court abused that discretion.

Plaintiffs argue their right to twelve impartial jurors. Defendant agrees, but contends impartiality is to be determined by the trial court. We are not faced with a novel question of law but with the application of longstanding principles to a precise factual situation. *State v. Land,* 478 S.W.2d 290 (Mo.1972).

The basic principle of jurors' impartiality is tersely stated in the oft-quoted case of *Theobald, supra* : "Under our system of jurisprudence there is no feature of a trial more important and more necessary to the pure and just administration of the law than that every litigant shall be accorded a fair trial before a jury of his countrymen, who enter upon the trial totally disinterested and wholly unprejudiced." Plaintiffs have briefed several cases applying that basic principle. Each one also expresses defendant's contention that a venireman's impartiality is to be determined by the trial court.

In the early case of *Glasgow v. Metropolitan St. Ry. Co.,* 191 Mo. 347, 89 S.W. 915[1] (1905), a venireman worked for a corpora-

---

1. For cases from other states see Annotation, 72 A.L.R.2d 673 et seq., Professional or business relations between proposed juror and attorney as ground for challenge for cause. Cases annotated at § 7[6], Indirect relations,

reveal none in which a venireman's kinship to an employee of a litigant's trial counsel was or was not adequate grounds for disqualifying the venireman.

tion allied with the defendant and upon his request the trial court excused him, over defendant's objections. In upholding the trial court's ruling, the court said: ". . . the authority of the court in such a case is not limited to a decision of the strict legal question of the qualifications of a juror. It has a discretion to be exercised in the administration of justice in which it may excuse a juror, who although not legally disqualified, yet whose sitting is reasonably liable to fill either party with an apprehension of unfairness. A court in the exercise of that discretion will not attempt to allay an unreasonable suspicion, but when it can remove a cause of reasonable apprehension on the one side without injuring in any degree the rights of the other or giving the other cause for a similar reasonable apprehension, it is the right and duty of the court to do so, and when in that respect the court exercises a sound judicial discretion its ruling will not be disturbed." We note the court declared a limitation on that principle: "The trial court stands closer to the source of justice than any other tribunal; upon the trial judge the heaviest responsibility rests, because much of the administration of justice depends on the wise exercise of a discretion that the law has imposed in him alone. We are satisfied that the court exercised its discretion wisely in excusing this juror."

Plaintiffs also rely on *Moss v. Mindlin's, Inc.,* 301 S.W.2d 761[9–11] (Mo.1957). In that case two veniremen had suffered injuries akin to plaintiff's but the trial court denied defendant's challenges. In upholding this the Supreme Court ruled: "We recognize that, as stressed by instant defendant, a venireman is not the judge of his own qualifications and that the trial court in the exercise of its discretion should resolve a substantial doubt as to the venireman's qualifications against the prospective juror." The court then explained the word "substantial," saying: "However, it is equally true that, on review by an appellate court, unless there is some fact which, we

reasonably can say, in and of itself, necessarily showed prejudice, or unless there is an admission of prejudice, past or present, or unless there is something in the demeanor of the venireman which, despite his actual words, discloses the existence of prejudice in fact, we should not convict the trial court of an abuse of discretion in overruling a challenge for cause."

Plaintiffs' contention, and its limitation, is summarized and explained in our case of *Leavitt v. St. Louis Public Service Company,* 340 S.W.2d 131[5–7] (Mo.App.1960). There, two veniremen professed impartiality despite injuries in previous motor vehicle collisions. The trial court denied defendant's challenges for cause. Writing for this court Judge Doerner wrote in affirming: "The exercise by a trial court of its discretion in that regard [sustaining a challenge for cause] should be encouraged. For with ' * * * the world absolutely filled with competent, unbiased, and unprejudiced jurors, * * *.'[2] *State v. Mace,* 262 Mo. 143, 155, 170 S.W. 1105, 1109, it would be prudent to resolve a substantial doubt as to a venireman's competency against him, *Moss v. Mindlin's, Inc.,* Mo., 301 S.W.2d 761, so as to excuse any juror whose sitting is reasonably liable to fill either party with an apprehension of unfairness. *Glasgow v. Metropolitan Street Railway Co.,* 191 Mo. 347, 89 S.W. 915. However, the question before us is not one of prudence or circumspection. What we are called upon to determine is whether the court abused its discretion in overruling the challenges and thereby committed reversible error. What the defendant contends, in effect, is that regardless of the fact that no bias or prejudice on the part of the venireman was shown, we should hold that such incompetency should be conclusively presumed as a matter of law under the circumstances existing in this case. While, as we have pointed out, the appellate courts have almost uniformly approved the action of a trial court in removing a doubtful juror, it is equally true that they have likewise upheld the trial court

---

2. This statement was dicta.

when it overruled challenges for cause, where no actual bias or prejudice was shown, even though a juror had some business or personal relationship with a party. *Kendall v. Prudential Life Insurance Co. of America,* [Mo., 327 S.W.2d 174] *supra; Grimm v. Gargis,* Mo., 303 S.W.2d 43. These and numerous other Missouri cases state the rule to be that the trial court is and should be vested with broad discretion in determining the qualifications of veniremen to sit as jurors and that its rulings should not be disturbed unless they are clearly and manifestly against the evidence. (citing cases.)"

In his brief defendant stresses the discretionary role of the trial court expressed in plaintiffs' cited cases, *Glasgow, Moss* and *Leavitt,* supra.

■ In exercising this discretion the trial court is not bound by a venireman's conclusions as to his own fitness. The trial court's decision "should rest upon facts stated by the juror with reference to his state of mind." *State v. Lovell,* supra. There is no abuse of the trial court's discretion where "the sense of the [voir dire] examination is that the juror would base his verdict solely on the evidence." *State v. Green,* 511 S.W.2d 867[15] (Mo.1974); *State v. Wraggs,* 512 S.W.2d 257[2, 3] (Mo.App.1974). Since this is the law, and the sense of venireman Duffy's voir dire did not show his state of mind precluded an impartial verdict, plaintiffs' only valid contention is that venireman Duffy's indirect relationship with the defendant, that is, his son being employed by defendant's attorneys, *ipso facto* rendered him unfit to serve as an impartial juror.

Defendant cites the early case of *State v. Jones,* 64 Mo. 391[8] (1877). Without citing authority or reason the court ruled: "the fact that LaForge was the father-in-law of the prosecuting attorney did not render him incompetent as a juror."

More pertinent here is the opinion of our supreme court in *State v. Land,* 478 S.W.2d 290[1, 2] (Mo.1972). Acknowledging the ap-

pellate court rule in reviewing a trial court's ruling on a venireman's qualification, the court held: "With a cross-section of society appearing as veniremen, an area is involved that not only cannot but should not be standardized. Recognition of this fact requires that there continue to be a broad discretion in the trial court; and that the exercise of such discretion should not be disturbed unless found to have been abused. In addition, doubts should be resolved in favor of the finding of the trial court. *State v. Wilson,* Mo., 436 S.W.2d 633, 637."

■ We have here for review a decision by a seasoned jurist, immersed in the atmosphere of the trial and able to assess the character and attitudes of persons selected from his rural community for jury service. He was called upon to decide whether venireman Duffy was able to serve impartially despite the fact that his son was associated with the lawyers who had been employed by defendant. The distinction between a qualified and an unqualified venireman is one of degree. As said in *Billmeyer v. St. Louis Transit Co.,* 108 Mo.App. 6, 82 S.W. 536 (1904): ". . . the prevalent test is the one stated by Chief Justice Marshall in Burr's case: 'That *light impressions,* which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those *strong and deep impressions,* which may close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him.'" (Our emphasis.)

■ There were four links in this chain of personal relationship: venireman Duffy, his son, his son's employer, and the defendant represented by that employer. The trial court apparently determined that at most venireman Duffy had a "light impression" which would yield to the law and evidence, and not a "strong and deep impression" which would close his mind. To reverse the

trial court we must find an abuse of discretion, that is, that the court's ruling ".
is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Edmonds,* 468 S.W.2d 685[1–5] (Mo.App.1971). Bearing in mind that "doubts should be resolved in favor of the trial court" (*State v. Land,* supra), we decline to rule reversible error in denying plaintiffs' challenge to venireman Duffy.

In reaching our conclusion we have fully considered the facially contrary case of *State v. Holliman,* 529 S.W.2d 932 (Mo.App. 1975). It is distinguishable. There, a murder conviction was reversed and remanded for the trial court's failure to sustain defendant's challenge for cause of venireman Wallace. The victim was John Summers, a police officer. Challenged venireman Wallace knew the slain policeman, was a friend of the policeman's father, had a son who was a policeman in the same district as the slain policeman and had discussed the case with his son. The trial court declared, erroneously, that it was precluded from sustaining defendant's challenge because venireman Wallace had concluded he could give defendant a fair trial. In reversing the conviction, two of the three judges separately concurred, holding no one of the four stated factors warranted a challenge for cause but did so when considered collectively. We hold that the case is distinguishable from and tends to support our decision which concerned only one challenged factor—venireman Duffy being the father of a clerk employed by defense counsel's law firm.

Judgment affirmed.

KELLY and STEWART, JJ., concur.

PER CURIAM:

The Court does not intend this opinion to be construed as approval of summary denial of challenges to jurors' qualifications. The juror in question in this case could reasonably fill the plaintiffs with an apprehension of unfairness. Our system of justice should be free of any such apprehension. Prudence would dictate resolving any substantial doubt of a juror's competence against seating the juror.