Harold L. GARRETT, Plaintiff-Appellant,

v.

JOSEPH SCHLITZ BREWING COMPANY, St. Louis Stag Sales Inc., and Everbrite Electric Sign Company, Defendants-Respondents.

No. 43023.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 2, 1982.

Lawrence O. Willbrand, St. Louis, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, F. Douglas O'Leary, St. Louis, for defendants-respondents.

Ralph Kleinschmidt, St. Louis, for St. Louis Stag Sales, Inc.

Robert Burns, Clayton, for Everbrite Electric Sign Co.

PUDLOWSKI, Judge.

Plaintiff-appellant Harold Garrett appeals from a judgment entered by the circuit court of the City of St. Louis. Plaintiff brought a suit in strict liability for injuries he sustained while repairing an electrical sign. Plaintiff sued defendant Everbrite Electric Sign, Inc., for the manufacture of a defective product; and St. Louis Stag Inc., and Joseph Schlitz Brewing Company for the distribution of that defective product. After hearing plaintiff's case, the trial court granted defendants' motion for a directed verdict. Plaintiff's motion for a new trial was denied. Plaintiff appeals the judgment entered on the directed verdict for defendants. We find that plaintiff failed to present any evidence tending to prove that the alleged defect in the sign was the proximate cause of his injury. We therefore affirm the judgment of the trial court.

The plaintiff's evidence revealed that he was an employee of Keller Sign Co., which is in the business of servicing, reconditioning and hanging signs. On November 1, 1974 Keller sent plaintiff to Rivituso's Bar in the City of St. Louis to assist Mr. DeMoulin, another Keller employee, in servicing an outdoor electrical sign. Mr. DeMoulin had been at the bar the day before to check the sign for defective wiring. He discovered that the sign was inoperative and that the defect was between the exterior of the building and the sign. The two experienced repairmen worked on the sign while the power to the sign was live. The sign was not properly grounded. Plaintiff positioned himself on a ladder while attempting to open the sign so that he could examine the inside. After removing the screws holding the sign together he placed one hand on the mast from which the sign was suspended and the other hand on the sign itself. Plaintiff jiggled the sign in an attempt to open it. While jiggling the sign he received an electrical shock. When plaintiff finally freed himself, he fell ten feet to the sidewalk below and sustained the injuries complained of in his petition.

Plaintiff contends that the sign was defective in its design and construction. The rectangular metal sign was originally manufactured to hang in a position with 3 foot horizontal sides and 6 foot vertical sides. The sign is made to light and display an advertisement imposed upon plastic faceplates screwed into the metal frame of the sign. When the sign is installed as originally intended, the top side has a rainguard and the bottom has drainholes.

Keller Sign Company had altered the sign in question so that it could hang with 6 foot horizontal sides and 3 foot vertical sides. Plaintiff claims that the manufacturer made faceplates meant to be displayed in this position. He argues that the manufacturer or distributors should have installed drainholes in the 6 foot side or provided a

fact sheet with instructions for installing such holes if the sign was hung horizontally. Plaintiff contends that the sign in question was defective in that it had no drainholes in the 6 foot side. He further contends that this defect was the proximate cause of his injury. This contention is based on plaintiff's claim that because there were no such holes, water accumulated in the sign on November 1. This water allegedly caused a wire to short circuit sending an electrical charge through the sign and plaintiff's body.

■ Missouri has adopted the Restatement (Second) of Torts, § 402A (1976) as its standard of liability in products liability cases. *Keener v. Dayton Electric Manufacturing Co.*, 445 S.W.2d 362, 364 (Mo.1969). One essential element that the plaintiff must prove in a products liability case is that the defect in the product was the proximate cause of injuries sustained by plaintiff while he was using the product in a reasonably anticipated manner. *Braun v. General Motors Corp.*, 579 S.W.2d 766, 769, (Mo.App.1979); MAI 25.04 (1978). Plaintiff claims that the absence of drainholes in the sign erected at Rivituso's Bar was the proximate cause of his injury because this defect allowed the accumulation of water which caused the short circuit. He asserts that he submitted sufficient evidence to render the proximate cause issue a jury question. We disagree and conclude that the trial court did not err in granting each defendant's motion for a directed verdict on the basis that plaintiff failed to show proximate cause.[1]

■ In reaching this conclusion we must consider the evidence in the light most favorable to the plaintiff with all reasonable inferences to be drawn therefrom. *Winters v. Sears, Roebuck & Co.*, 554 S.W.2d 565, 569 (Mo.App.1977). The plaintiff must present sufficient evidence from which a jury could reasonably infer without resort to conjecture or speculation that the lack of drainholes was the direct cause of the injury. *Hale v. Advance Abrasives*, 520 S.W.2d 656, 659 (Mo.App.1975).

■ Plaintiff introduced Dr. Lloyd Brown, Professor of Electrical Engineering at Washington University in St. Louis, as an expert witness. Dr. Brown testified that in his opinion water in a sign such as the one in question could be a cause of an electrical shock. An expert witness, unlike other witnesses, may express an opinion if he is qualified to do so and if the subject matter of his opinion is not of common knowledge so that the expert's opinion would be helpful to the jury. *McKinley v. Vize*, 563 S.W.2d 505, 508 (Mo.App.1978). Dr. Brown's expertise regarding possible causes of electrical shock is not contested. Dr. Brown had never observed the sign, thus his opinion regarding the cause of plaintiff's injuries was elicited through the use of hypothetical questions. This is a proper method of obtaining Dr. Brown's opinion. *McKinley v. Vize, supra* at 509. In a hypothetical question the expert is asked to assume the truth of the facts presented to him. Thus, hypothetical questions must be predicated on facts which are in evidence. *Hamilton v. Slover*, 440 S.W.2d 947, 955 (Mo.1969).

■ A careful reading of the transcript revealed that there was no evidence tending to prove that there was water in the sign on the day of plaintiff's injury. At one point in the trial, plaintiff stated that there was water in the sign while he was working on it. It was later established that this was merely a conclusion of his and he actually had no knowledge of any water in the sign. The only other testimony that referred to the existence of water in the sign was that five days after plaintiff's injury, water was found in the sign. During the five day lapse the sign had been left exposed with the faceplate screws removed, and plaintiff failed to present any evidence on the weather conditions during that period. Dr. Brown's opinion that water in the sign was a likely cause of plaintiff's injury was nec-

---

1. Each defendant contends that plaintiff failed to prove other elements of § 402A, as well. Since plaintiff has failed to prove proximate cause, however, the case can be dismissed without consideration of the other issues raised.

essarily based on an assumption that there was water in the sign on November 1. There was, however, no evidence presented which tended to establish the presence of water in the sign on that date.

In *Craddock v. Greenberg Mercantile, Inc.*, 297 S.W.2d 541 (Mo.1957), plaintiff's expert witness testified that a furnace explosion was the proximate cause of a fire in plaintiff's building. Nobody had testified that there had been an explosion. The only bit of evidence regarding an explosion was testimony that a piece of the furnace was found five days after the fire near a wall opposite the furnace. The expert's opinion that a furnace explosion was the proximate cause of the fire was deduced from an assumption that there had been an explosion. The Supreme Court ruled that an expert's opinion as to the cause of damage must be a conclusion of fact and must have a substantial basis in the facts actually established by the evidence. *Id.*, at 548. The court went on to state that an opinion of an expert may not be invoked to establish facts that are missing from the plaintiff's case and which form the basis of his opinion. *Id.* Moreover, the issue as to whether an expert's opinion is based on and supported by sufficient facts or evidence to sustain his opinion is a question of law for the court to decide. The court in *Craddock* concluded that because plaintiff failed to establish proximate cause, plaintiff had not made a prima facie case of negligence that was submissible to the jury. *Id.*

The facts in this case demand a similar conclusion. Dr. Brown's opinion that water in the sign was a possible cause of plaintiff's injury was based on his assumption that there was evidence of water in the sign on the day of plaintiff's injury. There was no evidence which tended to prove the presence of water at the time of the accident. Plaintiff's counsel attempted to alleviate this problem through another hypothetical question which elicited an opinion from Dr. Brown that there probably was water in the sign on the day of the injury. This opinion was the only evidence submitted tending to establish that fact and it was based primarily on the evidence that there was water in the sign five days later. Following the court's holding in *Craddock, supra* at 548, Dr. Brown's opinion as to the existence of water in the sign may not be invoked to establish that fact where it was not proven by other competent evidence. Plaintiff failed to present any competent evidence to prove the presence of water in the sign at the time of the accident which could have caused the electrical shock. Therefore, plaintiff failed to present any evidence that the absence of drainholes, which could have caused the accumulation of water, was the proximate cause of plaintiff's injury.

Judgment affirmed.

SMITH, P. J., and SATZ, J., concur.