**Kenneth J. HOLTGRAVE, Plaintiff-Respondent,**

v.

**Dr. William HOFFMAN, M.D., Defendant-Appellant.**

**No. 49462.**

Missouri Court of Appeals, Eastern District, Division Three.

July 22, 1986.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 20, 1986.

Application to Transfer Denied Oct. 14, 1986.

Brent W. Baldwin, St. Louis, for defendant-appellant.

Thomas J. Casey, St. Louis, for plaintiff-respondent.

GARY M. GAERTNER, Judge.

Defendant appeals from the trial court's order granting plaintiff a new trial after the jury returned a verdict in favor of defendant on plaintiff's claim for medical malpractice. We affirm.

At approximately 3:00 a.m. on October 14, 1979, plaintiff was a passenger in an automobile that collided head-on with another automobile on Interstate 70 in St. Charles County, Missouri. Plaintiff, who was unconscious, was transported immediately to the emergency room at DePaul Hospital, where he was placed under the care of defendant, a neurosurgeon. Several diagnostic procedures were immediately performed on plaintiff, including the taking of X-ray films of his chest and neck. The X-rays showed the cervical vertebrae, but stopped just short of the junction of the seventh cervical vertebral body (C7) and the first thoracic vertebral body (T1). A repeat cervical spine film taken the next day, approximately thirty hours after plaintiff's admission to the hospital, showed that plaintiff had suffered a severe subluxation fracture of the C7/T1 joint (a broken neck), and that his spinal cord had been severed, rendering him quadriplegic.

Plaintiff thereafter brought this action for medical malpractice against defendant, alleging that due to defendant's negligence in diagnosing and treating plaintiff's broken neck, plaintiff's spinal cord was severed sometime after his arrival at the hospital, thereby causing his quadriplegia.

During voir dire examination of the prospective jurors, one of the prospective jurors, Irene Gulovsen, stated that she might be "uncomfortable" in awarding a verdict in excess of one million dollars, and also expressed reservations about the fact that plaintiff had been convicted of armed robbery when he was seventeen years old. After the plaintiff's attorney moved to excuse Ms. Gulovsen for cause, the following colloquy occurred between the trial judge and Ms. Gulovsen:

THE COURT: Ma'am, if you can set aside your prejudices. Prejudice means to prejudge something. On the instructions of the Court and testimony from the witness stand, from those two things, could you render a fair verdict here?

A I don't know.

THE COURT: Could you set aside the prejudices?

A If I made every effort, but I could not be sure.

THE COURT: Thank you. The motion [to strike for cause] is overruled.

At trial, plaintiff's only expert medical witness was Dr. Richard Tozer, a neurosurgeon. Dr. Tozer opined that although plaintiff's neck was broken as a result of the automobile accident, all or part of plaintiff's spinal cord nevertheless remained intact when plaintiff was admitted to the hospital after the accident. He based this opinion upon a nurse's note recorded within two hours after plaintiff's admission which indicated that plaintiff was "moving all extremities." Dr. Tozer interpreted this note to refer to voluntary movements of the arms and legs, and testified that such movements would not have been possible if plaintiff's spinal cord had been severed prior to that time. Dr. Tozer opined that plaintiff's spinal cord was severed at some time between the time when this nurse's note was recorded and when the X-rays were taken the following day showing plaintiff's broken neck. This severance occurred, according to Dr. Tozer, because defendant had negligently failed to diagnose plaintiff's broken neck and had thus failed to sufficiently immobilize the neck while various diagnostic procedures were being performed on plaintiff.

Defendant's expert medical witnesses generally disagreed with Dr. Tozer's conclusion regarding the cause of plaintiff's quadriplegia. They opined that the automobile accident had caused the severance of plaintiff's spinal cord as well as his broken neck, and that any subsequent movements of plaintiff's arms and legs were purely involuntary, reflex actions which are not inconsistent with a severed spinal cord.

The author of the nurse's note in question, Ms. Lou Russ, testified that she had no independent recollection of plaintiff or his condition aside from the notations in his medical records. She testified that her note, "moving all extremities," did not identify any particular type of movement, and she could not presently identify the type of movement she had observed.

At the close of plaintiff's case and at the close of all the evidence defendant moved for a directed verdict on the ground that plaintiff had failed to establish a causal connection between defendant's treatment of plaintiff and plaintiff's quadriplegia. The court denied these motions and submitted the case to the jury. The jury returned a verdict in favor of defendant.

Plaintiff thereafter moved for a new trial on several grounds. The trial court granted this motion on the ground that it had erred in overruling plaintiff's motion during voir dire to strike Juror Gulovsen for cause. Defendant appeals from the trial court's order granting a new trial.

In his first point on appeal, defendant argues that the trial court erred in granting plaintiff a new trial on the ground that Juror Gulovsen had exhibited bias and prejudice during voir dire examination. Defendant contends, first, that plaintiff did not use any of his three peremptory strikes to remove Ms. Gulovsen from the jury panel, and thereby waived his right to raise this issue on appeal. Second, defendant contends that any bias on Ms. Gulovsen's part was focused solely on the issue of the amount of plaintiff's damages award, an issue which the jury never reached because it found no liability on defendant's part. Defendant thus concludes that plaintiff could not have been prejudiced by Ms. Gulovsen's presence on the jury.

Preliminarily, we note that an appellate court will be more liberal in upholding a trial court's order granting a new trial than if a new trial is denied. *Roux v. City of St. Louis*, 690 S.W.2d 448, 450 (Mo.App.1985).

A trial court is afforded wide discretion in passing on a motion for a new trial which raises an issue concerning the qualification of jurors. Its power to grant a new trial is discretionary only as to questions of fact, and the qualifications of jurors are questions of fact and matters affecting the determination of issues of fact. *Swift v. Bagby*, 559 S.W.2d 635, 637 (Mo. App.1977). Our review is thus limited to a

determination of whether the trial court has clearly abused its discretion in ordering a new trial. *Large v. Carr,* 670 S.W.2d 71, 72 (Mo.App.1984).

■ Defendant's first contention, that plaintiff waived his right to challenge the qualifications of Ms. Gulovsen by failing to remove her with a peremptory strike, is without merit. This court has held that "a litigant is entitled to a full panel of qualified jurors before making peremptory challenges." *Golden v. Chipman,* 536 S.W.2d 761, 763 (Mo.App.1976). *See also Butler v. Talge,* 516 S.W.2d 824, 829 (Mo.App.1974). Plaintiff's failure to strike Ms. Gulovsen from the jury panel is thus irrelevant to this issue.

■ Defendant's second contention, that plaintiff was not prejudiced because the jury found no liability on defendant's part, is equally without merit. Ms. Gulovsen's inability to act as an impartial juror was based not only on the size of the potential damages award, but also on the fact that plaintiff had a criminal record. The potential for prejudice against plaintiff thus remained substantial. Accordingly, this point is denied.

In his second point on appeal, defendant argues that the trial court erred in overruling his motions for directed verdict. Defendant contends that plaintiff failed to make a submissible case of medical malpractice because he did not establish a causal connection between defendant's alleged negligence and plaintiff's quadriplegia.

■ Sustaining a motion for a directed verdict is a drastic action which should only be taken if all the evidence and reasonable inferences therefrom are so strongly against the plaintiff that reasonable minds cannot differ. In reviewing the trial court's decision to deny defendant's motion for directed verdict, we must view the evidence in a light most favorable to the plaintiff and disregard defendant's evidence except insofar as it supports plaintiff's case. *Delisi v. St. Luke's Episcopal-Presby-* *terian Hospital, Inc.,* 701 S.W.2d 170, 173 (Mo.App.1985).

In the case at bar, plaintiff's only expert medical witness opined that defendant's negligent failure to properly diagnose plaintiff's broken neck caused the severance of plaintiff's spinal cord. This conclusion was based solely upon a nurse's note stating that plaintiff was "moving all extremities" shortly after arriving at the hospital. Defendant contends that this nurse's note does not provide a substantial basis for the expert's opinion, especially since the author of the note herself testified that the note did not describe the type of movement observed.

■ "[A] doctor's opinion, like that of any expert, is in the nature of a conclusion of fact, but it must have a substantial basis in the facts actually established and it cannot be invoked to establish the facts...." *Butcher v. Main,* 426 S.W.2d 356, 359 (Mo. 1968). The question whether an expert's opinion is based upon and supported by sufficient facts in evidence to support the same is a question of law for the court. *Vosevich v. Doro, Ltd.,* 536 S.W.2d 752, 760 (Mo.App.1976).

■ We hold that plaintiff made a submissible case of medical malpractice. Dr. Tozer testified directly on the issue of causation, and based his opinion upon a reasonable degree of medical certainty. Although Dr. Tozer's opinion was founded ultimately on the nurse's note, this excerpt from plaintiff's medical records provides a substantial basis for the expert opinion. Defendant attempts to attack the substantiality of the nurse's note by citing the testimony of his own witnesses, including that of nurse Lou Russ, but we must disregard that evidence and view all the evidence in a light most favorable to plaintiff's case. Given this standard of review, we cannot say that the trial court erred in submitting the case to the jury. This point is denied.

The trial court's order granting a new trial is affirmed.

KAROHL, P.J., and SIMON, J., concur.